William D. Hyslop
United States Attorney
Eastern District of Washington
Richard R. Barker
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:19-CR-00145-RHW |
| Plaintiff, | |
| v. | United States' Sentencing Memorandum |
| JESSE MCKAY, | |
| Defendant. | |

Plaintiff, United States of America, by and through William D. Hyslop, United States Attorney for the Eastern District of Washington, and Assistant United States Attorney Richard R. Barker, submits the following sentencing memorandum. For the reasons set forth below, the government recommends a sentence of 120 months of imprisonment and a three year term of supervised release.

**I.    STATEMENT OF FACTS**

On July 17, 2019, the Defendant struck the victim, his brother, C.A.M., in the face with a metal curl bar while C.A.M. was asleep on a chair in the living room of their mother's home. C.A.M. was awoken by the strike to his face and woke up to see Defendant standing above him holding the metal curl bar. C.A.M. then ran to a neighbor's home to get help. The neighbor called 911 and a Colville Tribal Police Department officers responded to the scene. The officer observed

United States Sentencing Memorandum -- 1

C.A.M. standing outside of the home holding a shirt to his face to stem the flow of blood.  Once C.A.M. removed the shirt from his face, the officer observed a large amount of blood under C.A.M's right eye.  The officer also observed a large amount of dried blood on C.A.M.'s chest and stomach, as well as a blood on the walkway trailing from the inside of the home where the assault occurred.  A search of the house revealed a metal curl bar behind a door.

      C.A.M. was transported to the Coulee Medical Clinic, where he was treated for his injuries.  There, C.A.M. received six sutures for a five centimeter laceration under his right eye, one suture for a one centimeter laceration on the right side of his nose.  A computerized topography (CT) scan revealed a fracture to the right side of the nasal bone and involving the sides of C.A.M.'s nose.  C.A.M. was prescribed antibiotics and pain medication for his injuries.  C.A.M. has continued to experience significant effects of these injuries, stating that he suffers from blurred vision and sees black spots.  C.A.M. also informed law enforcement that he can no longer drive at night, as the headlights from oncoming traffic cause his eyes to blur and cause pain.

      Defendant was taken into custody by CTPD officers after the incident.  While defendant initially told officers that he had punched C.A.M. once in the face after C.A.M. refused to leave the home upon Defendant's request, when Defendant arrived at the jail, he told police that he "hit [C.A.M.] with a pipe."  Tribal Police then confirmed that the pipe Defendant used was the metal curl bar found in the home.  Forensic examination showed that a red-brown stain consistent with blood on the pipe was a match to C.A.M.'s DNA.

      While in pre-trial custody at the Spokane County Jail for the assaulting C.A.M., Defendant committed a sexual assault on another inmate in the jail, his cellmate, J.E.G.  At night, Defendant covered the light in the cell with paper and toothpaste to block the light.  While J.E.G. was asleep and unable to consent,

United States Sentencing Memorandum -- 2

Defendant pulled down J.E.G.'s boxer shorts and administered oral sex to J.E.G. J.E.G. awoke to the Defendant's mouth on his penis and pushed Defendant away. J.E.G. is a Spanish speaker and was not able to report the incident to the English-speaking correctional officer on duty. J.E.G., however, sent a note in Spanish to another inmate reporting the assault and an officer responded to J.E.G. After correctional staff were alerted, J.E.G. was transported to Deaconess Medical Center for a sexual assault examination. This examination ultimately recovered Defendant's DNA present on J.E.G.'s penile swab.

## II. SENTENCING CALCULATIONS

The government agrees with United States Probation that Defendant's total offense level is 20. The government further agrees with probation's calculation of his criminal history – i.e., that his criminal history falls into Category III under the guidelines. The United States, however, submits that this score does not accurately reflect the seriousness of Defendant's criminal history, which includes prior assaultive conduct and prior murder conviction. *See* ECF No. 105 at ¶ 170.

As set forth in the United States' motion for an upward departure/variance, the government argues that a criminal history category of VI is more appropriate. Again, Defendant has prior convictions for second-degree murder and for another physical assault. Defendant ultimately served a total of sixteen years in prison on these two convictions alone. Based on this history, the United States submits that the more appropriate criminal history category is VI, which would result in a much higher range.[1]

---

[1] Defendant asserts that an upward adjustment based on his criminal history is inappropriate under *United States v. Bad Marriage*, 392 F.3d 1102, 111 (9th Cir. 2004). In *Bad Marriage*, the Ninth Circuit reversed an upward departure where the defendant had numerous misdemeanor convictions. *Bad Marriage*, however, is

As set forth below, the government recommends a sentence of 120 months imprisonment, which is the statutory maximum for this offense and reflects the seriousness of Defendant's conduct, as well as the seriousness of the Defendant's prior convictions and continued criminal conduct after Defendant's arrest for assaulting C.A.M., the crime of conviction in this case.

## II.    SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

In determining the appropriate sentence, this Court should consider the factors as set forth in 18 U.S.C. § 3553(a).

1. <u>The nature and circumstances of the offense and the history and characteristics of Defendant.</u>

The circumstances of the offense involve Defendant's assault of his brother in their mother's home, resulting in serious injuries to the victim with significant and continuous effects. The assault on C.A.M. caused a lacerations on his face requiring sutures and a fractured nose. ECF No. 105 at ¶ 19. In addition, the

---

easily distinguishable. Not only are Defendant's prior convictions serious felonies, including murder and assault, but Defendant's history reflects an escalating pattern of criminality and a modus operandi of assaulting his victims in their sleep. Indeed, Defendant's criminal history began at a young age, with several arrests and convictions on misdemeanor charges including violations of liquor laws and charges for public urination. ECF No. 105 at ¶¶ 55, 57, 84. After age 21, Defendant's behavior escalated, and he was arrested for assault and battery on a numerous occasions. ECF No. 105 at ¶¶ 92, 97, 106. From there, Defendant has committed murder and a number of serious violent assaults. At sentencing, the United States further will be prepared to introduce evidence that Defendant perpetrated a sexual assault while the instant case was pending – again against an unsuspecting sleeping victim.

United States Sentencing Memorandum -- 4

assault happened while C.A.M. was asleep, meaning he was not able to avoid the blows or attempt to defend himself from them. ECF No. 105 at ¶ 13. Frankly, C.A.M. is incredibly lucky that he was not hurt worse, as a result of being struck in the face with a heavy weightlifting bar.

Defendant's history is particularly concerning, reflecting a person who often uses violence toward those closest to him, including family and romantic partners. As this Court is well aware. Defendant has previously been convicted after a trial of second-degree murder of his girlfriend and mother of his child. ECF No. 105 at ¶ 65. In that case, Defendant slit the victim's throat and stabbed her once in the chest, passing through multiple organs, including her heart, following an argument while their infant child was in the room. ECF No. 105 at ¶¶ 67, 68. This Court sentenced Defendant to ten years in prison for the murder. ECF No. 105 at ¶ 65. Yet, while the Court gave Defendant another chance –sentencing him to just 10 years – Defendant engaged in further criminal conduct toward a loved one shortly after release in his murder case. *See* ECF No. 105 at ¶ 97.

Within months of his release on the murder conviction, Defendant again assaulted a romantic partner. On June 10, 2009, Defendant assaulted his live-in girlfriend. ECF No. 105 at ¶ 74. This assault bears a disturbing resemblance to the assault in the instant offense and to the assault that Defendant perpetrated in custody at the Spokane County Jail. The victim of the 2009 assault reported to a Spokane County deputy that Defendant punched her in the face and jaw while she slept, waking her up. ECF No. 105 at ¶ 74. The victim noted that she had difficulty speaking due to pain in her jaw, and she experienced pain in her rib cage area when breathing. ECF No. 105 at ¶74. Photos of the injuries showed bruising across the victim's chest and breasts and bruising on her upper left leg. ECF No. 105 at ¶ 74. Defendant stated that he "just snapped" and had "roughed her up a little bit." ECF No. 105 at ¶ 74. This Court ultimately revoked Defendant's

United States Sentencing Memorandum -- 5

supervised release and resentenced Defendant to sixty months' imprisonment for violating his supervised release conditions. Defendant also faced 9.75 months' imprisonment on state charges related to the assault of his sleeping girlfriend. ECF No. 105 at ¶¶ 65, 72.

In addition to these assaults, for which Defendant was convicted, Defendant was also arrested in 1996 on charges of assault and battery for assaulting his sister and damaging her car in the process. ECF No. 105 at ¶ 93. During an argument with his sister, Defendant threatened to damage his sister's car. ECF No. 105 at ¶ 93. The sister followed Defendant outside, where Defendant pushed his sister's head around and repeatedly pulled her hair. ECF No. 105 at ¶ 93. Defendant then threw billiard balls at his sister while she attempted to leave by driving away from the residence in her car, damaging the windshield. ECF No. 105 at ¶ 93. During her attempt to escape, the victim's car became stuck in a ditch. ECF No. 105 at ¶ 93. While the car was stuck, Defendant struck the windshield with a hatchet. ECF No. 105 at ¶ 93. Ultimately, the charges from this incident were dismissed when both Defendant and the victim failed to appear for trial. ECF No. 105 at ¶ 94. The danger to the community, however, did not go away.

In addition, and while Defendant was facing charges in this case, Defendant committed an assault against another person that was close to him. As described herein, Defendant sexually assaulted his sleeping cellmate, J.E.G, while J.E.G. slept in their joint cell in early 2020. ECF No. 105 at ¶ 80. That offense, while dismissed as part of the parties' plea agreement, further demonstrates that danger that Defendant poses to the community and to those close to him.

Aside from the extremely violent conduct, particularly against victims who are sleeping, Defendant's criminal history reflects a lack of respect for requirements imposed on him as a Defendant. The Defendant has failed to appear in court for multiple previous charges. *See, e.g.*, ECF No. 105 at ¶¶ 61, 64, 94 91,

United States Sentencing Memorandum -- 6

99, 105. Similarly, and notwithstanding the resources and drug treatment programs afforded to Defendant through supervision, Defendant also has a history of substance abuse, including heavy alcohol abuse from a very young age as well as using methamphetamine and heroin. *See* ECF No. 105 at ¶¶ 129, 131. These circumstances and characteristics further reflect the danger Defendant poses to the community.

Defendant also has a history of mental illness, which is concerning in this case because Defendant has refused to take medications while in custody at the Spokane County Jail on the instant offense. *See* ECF No. 105 at ¶ 122. Defendant's medical records indicate that he suffered from depression, anxiety, and post-traumatic stress disorder. Yet, as noted in the PSIR, Defendant flat out refused his medications from July 16 and July 19, 2020 and again refused his medication from August 12 to September 15, 2020. ECF No. 105 at ¶ 123, 125.

In sum, the nature of the offense coupled with Defendant's history and characteristics demonstrate the need for a strict sentence. Defendant has a history of extremely violent conduct. Defendant also has a history of attacking others while they are asleep, both physically and sexually. This history coupled with Defendant's refusal to comply with court orders and refusal to take medications for his mental illness, demonstrate that Defendant is a danger to the community. Defendant has remained undeterred from violent conduct despite numerous previous prosecutions and long periods of incarceration. Imposing the maximum statutory penalty is appropriate in this case.

2. <u>The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, to provide just punishment, and deter criminal conduct.</u>

While the United States' sentencing recommendation is above the guidelines range calculated by United States Probation, the government believes it is the most

appropriate sentence based on the seriousness of the offense and the need to provide just punishment.

As set forth above, Defendant's conduct in this offense was very serious. Defendant used a metal curl bar to attack his sleeping brother, resulting in a broken nose and lacerations on his face requiring sutures. These injuries are severe and the victim, C.A.M., continues to experience effects of these injuries, including blurred vision, pain, and an inability to drive at night. ECF No. 105 at ¶ 28. By attacking C.A.M. while he slept, Defendant attacked when his victim was most vulnerable. C.A.M. was unable to anticipate the assault or to make any movements to protect himself from the blow of the metal curl bar or to prevent the serious injuries he suffered.

Significantly, Defendant has been warned by this Court on two prior occasions that violence is not the answer – after his murder conviction and then when his supervised release was revoked for attacking a girlfriend. Yet, the prior sentences – amounting to sixteen years – have not dissuaded Defendant from engaging in other acts of violence. Justice in this case – which must take into account the harm that has resulted and will result again if Defendant is released and hurts someone else – is a sentence to the statutory maximum.

Ultimately, the sentence must be sufficient to protect the community and deter Defendant from engaging in violence. In this regard, because Defendant has effectively demonstrated that no amount of prison time will deter him from harming others – sixteen years was not enough. Accordingly, the Court's focus should be on protecting the community to the maximum extend afforded under the law. In this case, ten years is a just sentence for a convicted murder, who has refused to comport his conduct with laws designed to protect members of the community.

> 3. <u>The need to avoid unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct.</u>

Although the sentencing guidelines reflect the importance of considering "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6), "when deciding whether to depart, the sentencing judge must determine whether any atypical, relevant conduct warrants a higher sentence." *United States v. Nagra*, 147 F.3d 875, 883 (9th Cir. 1998). The court may depart upward where "reliable information indicates that the defendant's criminal history category substantially underrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." *See* USSG § 4A1.3.

A variance or "[d]eparture is also justified purely on the basis of Defendant's likelihood of recidivism. The principal factors we apply in assessing likelihood of recidivism are 1) the quantity (or "repetitiveness") of uncounted criminal conduct, 2) the similarity of uncounted criminal conduct to the offense conduct, and 3) the degree to which the defendant has been deterred by prior sentences." *United States v. Connelly*, 156 F.3d 978 (9th Cir. 1998); *United States v. Chatlin*, 51 F.3d 869, 873 (9th Cir.1995); *United States v. Myers*, 41 F.3d 531, 534 (9th Cir. 1994); *United States v. Montenegro–Rojo*, 908 F.2d 425, 429–30 (9th Cir.1990)).

In crafting the appropriate sentence, the Court may also take into consideration a defendant's conduct in the time between the charged offense and the sentencing. *See Myers*, 41 F.3d at 533 (holding that U.S.S.G. § 4A1.3 constitutes legal authority for a district court to depart upward in imposing sentence, based on defendant's post-offense criminal conduct). In *Myers*, the Ninth Circuit upheld an upward departure from the guidelines sentence where a defendant, convicted of wire and mail fraud, committed additional crimes <u>after</u> the initial offense and before the sentencing. The Ninth Circuit observed that the

United States Sentencing Memorandum -- 9

defendant's post-offense criminal conduct "constitutes the strongest possible evidence of the likelihood that she will continue to commit similar crimes in the future." *Myers*, 41 F.3d at 534.  Similarly, Defendant McKay's conduct between his arrest for the instant offense and his sentencing constitutes strong evidence of the likelihood that Defendant will continue to commit similar crimes it the future. *See* USSG § 5K2.21, ("[T]he court may depart upward to reflect the actual seriousness of the offense based on conduct . . . underlying a charge dismissed as part of a plea agreement in the case and that did not enter into the determination of the applicable guideline range.")

As set forth in the United States Motion for an Upward Departure/Variance, Defendant's post-offense conduct in this case is telling.  When Defendant was in custody for assaulting C.A.M., the Defendant against assaulted his cellmate, J.E.G., while J.E.G. slept.  This conduct reflects the latest incident in a repeated pattern of assaultive and escalating attacks against those sleeping in close proximity to Defendant:  Defendant's girlfriend in 2009, C.A.M. in 2019, and now J.E.G. in 2020.  These three incidents are strikingly similar – all three victims were asleep and in their most vulnerable state when Defendant attacked, including in the instant offense.  In light of this pattern of assaultive conduct, there is a substantial likelihood of recidivism, warranting an upward adjustment – whether a departure or variance – from the Guideline range.

## GOVERNMENT'S SENTENCING RECOMMENDATION

The government recommends the Court impose a sentence of one hundred-twenty months imprisonment, as well as a three-year term of supervised release. Although this sentence is above the guidelines range as determined by Probation, the United States believes the recommended sentence is the most appropriate resolution of this case, in consideration of all factors under § 3553(a).  Defendant is a convicted murderer, who has since engaged in a series of assaults against

United States Sentencing Memorandum -- 10

sleeping victims. The safety of the community requires a sentence consistent with the government's recommendation.

Respectfully submitted this 20th day of October, 2020.

>William D. Hyslop
>United States Attorney
>
>*s/Richard R. Barker*
>Richard R. Barker
>Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

Nicolas Vieth
Vieth Law Offices, Chtd.
912 East Sherman Ave.
Coeur d'Alene, ID 83814
nick@viethlaw.com

Justin Lonegran
Bohrnsen Stocker Smith Luciani Adamson PLLC
312 W. Sprague Ave.
Spokane, WA 99201
JLonergan@bsslslawfirm.com

                                                  s/ *Richard R. Barker*
                                                  Richard R. Barker
                                                  Assistant United States Attorney