FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 16, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>   v.<br><br>JESSE MCKAY,<br><br>                              Defendant. | NO:  2:19-CR-00145-RHW-1<br><br>**Memorandum Opinion Re:<br>Sentencing**<br><br>**(ECF Nos. 106, 107)** |

A sentencing hearing was held on October 28, 2020. Defendant Jesse McKay (hereinafter "McKay") was present, in custody, and represented by Nicolas V. Vieth and Justin P. Lonergan. Assistant United States Attorneys Richard R. Barker and Michael Louis Vander Giessen appeared on behalf of the United States. The Court heard testimony and argument, and imposed sentence. This Memorandum Opinion memorializes and supplements the Court's oral rulings.

## I.    Factual and Procedural Background

On July 17, 2019, McKay struck his brother, Charles McKay (hereinafter "Charles") in the face with a metal curl bar (or weightlifting bar) while Charles was asleep in the living room of their mother's house. ECF No. 111 ¶ 13. The

Memorandum Opinion Re: Sentencing ~ 1

incident occurred on the Colville Indian Reservation. ECF 102, at 4. The Colville

Tribal Police Department arrived on scene. Charles was transported to Coulee

Medical Clinic where he received five sutures under his right eye, one suture on

the right side of his nose; and a Computerized Tomography (CT) scan revealed a

fracture to the right side of his nasal bone. ECF No. 111 ¶¶ 14, 19. Charles was

prescribed antibiotics and pain medication for his injuries. *Id.* ¶ 19.

McKay was charged with three counts in the Second Superseding

Indictment. ECF No. 89. The Court accepted McKay's guilty plea to Count 2,

Assault Resulting in Serious Bodily Injury in Indian Country in violation of 18

U.S.C. §§ 113(a)(6) and 1153, and the Government agreed to dismiss Count 1

(Assault with a Dangerous Weapon in Indian Country under 18 U.S.C.

§§ 113(a)(3) and 1153) and Count 3 (Sexual Abuse, 18 U.S.C. §§ 2242(2) and

2246(2)(B)). The elements for Count 2 are: (1) McKay assaulted Charles by

intentionally striking him; (2) as a result Charles suffered serious bodily injury; (3)

the assault took place within the external boundaries of the Confederated Tribes of

the Colville Reservation; (4) McKay is an Indian and an enrolled member; and (5)

the Confederated Tribes of the Colville Reservation is a federally recognized tribe.

## A. Dismissed Count 3 – Sexual Abuse

While in pretrial custody at the Spokane County Jail for assaulting Charles,

McKay committed a sexual assault on his cellmate, J.E.G. *See* ECF No. 89, at 2;

Defendants Exhibit 206, at 1. A Spokane County Detention Services incident

Memorandum Opinion Re: Sentencing ~ 2

report, dated January 3, 2020, documents the assault. Defendant's Exhibit 206, at 1. J.E.G., McKay's cellmate and the victim of the assault, testified to the events at the sentencing hearing. According to the incident report, McKay covered the light in his cell with toilet paper and toothpaste to make the cell darker. *See* Exhibit 206, at 1; ECF No. 106-7. When J.E.G. awoke in the middle of the night, his underwear were pulled down and McKay has his mouth on J.E.G's penis. Exhibit 206, at 1. J.E.G. pushed him away and said no. Exhibit 206, at 1. When interviewed later by the FBI about the incident, J.E.G. stated that he told McKay in English, "I call the police." ECF No. 106-8, at 3. J.E.G.'s native language is Spanish, and he speaks very little English. *Id.* According to the jail incident report, McKay spit on J.E.G.'s midsection, which J.E.G. wiped off "with a dry towel but did not wash." Exhibit 206, at 1.

J.E.G. attempted to alert jail staff but was unable to because the guard on duty did not speak Spanish. Exhibit 206, at 2. At approximately, 8:37 a.m. the following morning, Officer Vanetta was informed by another inmate that J.E.G. needed to speak with an officer. Exhibit 206, at 1. J.E.G. then told Officer Vanetta through the translation of another inmate that he had been sexually assaulted by McKay. Exhibit 206, at 2.

J.E.G. was transported to Deaconess Hospital to have rape kit performed at approximately 9:20 a.m. the morning of January 4, 2020. *Id.* at 1. In the interview with the FBI, and in his testimony at the sentencing hearing, J.E.G. confirmed that

Memorandum Opinion Re: Sentencing ~ 3

he ejaculated as a result of the sexual assault. ECF No. 106-8, at 3. The

Washington State Crime lab confirmed the presence of saliva from McKay and

semen from J.E.G. on J.E.G.'s penal swab. ECF No. 106-9, at 1 (Gov't Exhibit 9).

### 1.    The note

J.E.G. testified that following the incident, he wrote a note to another

jail inmate named José seeking his help. A note was admitted at the hearing

and read into evidence. Gov't Exhibit 11. In the note, J.E.G. recounted that

McKay had sucked his penis while J.E.G. was asleep and repeatedly asked

the other inmate for help. J.E.G. testified that he gave a note to an inmate

delivering food on the morning of January 4, 2020.

## II.    Offense Level

McKay has a base offense level of 14. U.S.S.G. § 2A2.2(b)(2)(B). The Court

finds that the use of the curl bar when striking Charles constituted the use of a

dangerous weapon, thereby increasing the offense level by 4. *Id.* § 2A2.2(b)(2)(B).

The victim sustained serious bodily injury including five sutures for a laceration

under his right eye, one suture on the right side of his nose, and a fracture to the

right side of the nasal bone; he also experienced pain and blurred vision.

Accordingly, the offense level is increased by 5 levels. U.S.S.G. § 2A2.2(b)(3)(B).

The Court notes that the Guidelines provide for a 7-level increase if the degree of

bodily injury is "permanent or life-threatening." U.S.S.G. § 2A2.2(b)(3)(C). The

victim's ongoing and continued loss of vision might constitute a permanent injury.

The Court has not imposed this 7-level increase because the U.S. Probation Office has removed the information in the Presentence Investigation Report (PSR) related to Charles's continued loss of vision. ECF No. 112, at 3 (Addendum to PSR, Objection 4). Next, McKay receives a 3-level reduction in offense level for acceptance of responsibility. U.S.S.G. §§ 3E1.1(a) & (b). The resulting offense level is **20**.

### III.    Criminal History

The PSR calculated McKay's criminal history points as 5 resulting in a criminal history category of III. ECF No. 111 ¶ 77. In September 1999, McKay was convicted of second-degree murder in this Court, receiving a sentence of 135 months in prison. ECF No. 111 ¶ 65; Case No. 2:98-cr-02130-RHW-1. After being released from prison, this Court revoked McKay's supervised release for assaulting his girlfriend in her sleep. ECF No. 111 ¶¶ 65, 74. In that incident, McKay awoke his girlfriend by punching her in the chest and jaw, resulting in bruising on her chest area from armpit to armpit, and pain in her jaw and rib cage. ECF No. 111 ¶ 74. This Court sentenced McKay to 60 months for the revocation with no supervised release to follow. ECF No. 111 ¶ 65. The U.S. Probation Office correctly calculated the underlying second-degree murder and the sentence revocation as 3 points under U.S.S.G. § 4A.1.1(a). ECF No. 111 ¶ 65.[1] Washington

---

[1] U.S.S.G. § 4A1.2(k) specifies that in the case of a prior revocation of supervised release, "add the original term of imprisonment to any term of imprisonment

State also brought charges for this assault and sentenced McKay to 9.75 months in jail to be served consecutive to the federal sentence. *Id.* ¶ 72. The state assault charge results in 2 points under § 4A.1.1(b). *Id.* ¶ 72.

## IV.   Variance or Departure for Dismissed and Uncharged Conduct

The Government filed a motion for upward variance or departure under U.S.S.G. § 5K2.21 based on the dismissed Count 3 in the Second Superseding Indictment. ECF No. 106. As explained in detail above, the grand jury charged McKay with knowingly engaging in a sexual act against his cellmate while his cellmate was asleep and unable to consent. ECF No. 89, at 2–3.

### A. Legal Standard – § 5K2.21

Under the Ninth Circuit's interpretation of U.S.S.G. § 5K2.21 in *United States v. Barragan-Espinoza*, 350 F.3d 978, 983 (9th Cir. 2003), this Court may impose an upward departure for dismissed or uncharged conduct in connection with a plea agreement.

On November 1, 2000, the U.S. Sentencing Commission added § 5K2.21 to the Guidelines. U.S.S.G. § 5K2.21, Appendix C, amendment 604 [hereinafter "Amendment 604"]. The guideline reads:

> The court may depart upward to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of a plea agreement in the case, or underlying a potential charge not pursued in the case as part of a plea agreement or for any other reason; and (2)

---

imposed upon revocation." Thus, the 135-month sentence is added to the 60-month sentence, leaving the 3-point calculation under § 4A1.1(a) unchanged.

that did not enter into the determination of the applicable guideline range.

U.S.S.G. § 5K2.21. Prior to implementing § 5K2.21, the circuits were split on whether conduct dismissed as part of a plea agreement could form the basis of an upward departure. *See United States v. Lawton*, 193 F.3d 1087, 1090 (9th Cir. 1999) (rejecting upward departure in false statements conviction based on child abuse counts which were dismissed as part of a plea bargain), *superseded as recognized by Barragan-Espinoza*, 350 F.3d at 983. As demonstrated by *Lawton*, before § 5K2.21 was implemented, the Ninth Circuit prohibited upward departures based on counts dropped in plea bargaining. 193 F.3d at 1090 ("Our cases make clear that uncharged or dismissed conduct, in the context of a plea agreement is an illegal basis for a departure.") *citing United States v. Castro-Cervantes*, 927 F.2d 1070 (9th Cir. 1990) *and United States v. Faulkner*, 952 F.2d 1066 (9th Cir. 1991).

## 1. Amendment 604

By promulgating § 5K2.21, the Sentencing Commission intended to resolve the circuit split as to whether dismissed or uncharged conduct could properly be used as a departure from the Guidelines. Amendment 604; *see United States v. Newsom*, 508 F.3d 731, 734 (5th Cir. 2007) (noting the Sentencing Commission endorsed the majority position that uncharged or dismissed conduct could form the basis of a departure). In *Barragan-Espinoza*, 350 F.3d at 983, the Ninth Circuit recognized the import of Amendment 604, concluding it "plainly permits

sentencing courts to consider as a basis for an upward departure aggravating conduct that is dismissed or not charged in connection with a plea agreement."

In addition to adding § 5K2.21, the Sentencing Commission also added a cross-reference to § 5K2.21 in the commentary to § 6B1.2(a) which addresses plea agreements. Read in context of the complete paragraph, this addition shows that a § 5K2.21 departure is not limited to "relevant conduct." The Sentencing Commission stated that its reasons for promulgating Amendment 604 was to address the circuit conflict regarding whether a court may base an upward departure on conduct dismissed or not charged as part of a plea agreement.

As applied to the present case, McKay's argument that the Ninth Circuit has not addressed the applicability of § 5K2.21 is contradicted by *Barragan-Espinoza*.

## 2. Connection between offense of conviction and other conduct

McKay argues that a § 5K2.21 departure may not be imposed unless the dismissed conduct is related to the offense of conviction. ECF No. 110, at 4. McKay points to the Ninth Circuit's historical skepticism of using dismissed counts in *Castro-Cervantes*, 927 F.2d at 1082. *Id.* at 5. However, McKay neglects to mention *Barragan-Espinoza* ruled that *Castro-Cervantes*' reasoning was no longer good law. 350 F.3d at 983. McKay's argument is refuted by the plain language of § 5K2.21, and Amendment 604 confirms that the Commission sought to give sentencing courts broad discretion to consider dismissed counts in sentencing.

Memorandum Opinion Re: Sentencing ~ 8

McKay's reliance on *United States v. Amirault*, 224 F.3d 9 (1st Cir. 2000), ECF No. 110, at 4–5, is misplaced. In *Amirault*, the sentencing court imposed an upward departure under the general departure provision, § 5K2.0, because the defendant had sexually assaulted two of his underage sisters-in-law. *Id.* at 11. In *Amirault*, the guideline applicable to the offense of conviction was § 2G2.4, (possession of child pornography), but the district court used factors from § 2G2.2 (trafficking guideline) to determine whether a general departure under § 5K2.0 was warranted. *Id.* at 12. McKay correctly articulates the First Circuit's holding that upward departures are permissible for acts of misconduct which "relate meaningfully to the offense of conviction," even when the misconduct is not § 1B1.3-relevant conduct and did not result in conviction. *Id.* However, McKay's argument ignores that in the present case, the Government seeks an upward departure under § 5K2.21 for the dismissed sexual abuse account rather than an unspecific departure under § 5K2.0. Thus, *Amirault* does not address whether dismissed conduct as part of a plea agreement can be considered under § 5K2.21.

On the other hand, the Fifth Circuit decision in *United States v. Newsom* supports McKay's position that the misconduct forming the basis of a § 5K2.21 departure must be at least minimally related to the offense of conviction. 508 F.3d 731, 735 (5th Cir. 2007) ("[W]e join those other circuits, such as the Eighth Circuit, in interpreting § 5K2.21 as requiring some degree of connection between uncharged offenses, although even a remote connection will suffice.").

Memorandum Opinion Re: Sentencing ~ 9

1    While the Ninth Circuit has not explicitly rejected the Fifth Circuit's

2  approach, its interpretation of § 5K2.21 in *Barraga-Espinoza* appears to refute the

3  legal standard promoted by McKay. In turn, because the Court makes the

4  affirmative finding that McKay committed the alleged sex act, it can properly use

5  that misconduct as an upward departure under § 5K2.21.

6    In considering all the evidence, the Court finds by clear and convincing

7  evidence that McKay committed the wrongful alleged conduct in Count 3. First,

8  the Court finds that sexual contact of an oral nature occurred as demonstrated by

9  J.E.G.'s testimony and the physical evidence which uncovered traces of McKay's

10  DNA from J.E.G.'s penal swab. ECF No. 106-9, at 1. Next, the Court finds that

11  J.E.G. testified credibly. Although, J.E.G. may ultimately benefit from his

12  testimony against McKay in his pending criminal charges, the record does not

13  show that J.E.G. was aware of any perceived benefit at the time he reported the

14  assault. J.E.G.'s testimony was consistent with the initial jail report, and the

15  contemporaneous note pleading for help corroborates his testimony. Defense

16  counsel points to the fact that the note was found in J.E.G.'s cell as evidence that

17  J.E.G. was untruthful. The Court makes no such inference. J.E.G. testified

18  consistent with his earlier statements that he attempted to report the assault that

19  night, but the guard did not speak Spanish. In turn, he reported the assault the

20  following morning, at which time he was transported to the hospital and the jail

21  cell became a crime scene. For these reasons, the Court finds by clear and

Memorandum Opinion Re: Sentencing ~ 10

convincing evidence that McKay sexually assaulted J.E.G. while J.E.G. was asleep and unable to consent.

If McKay would have been convicted of Count 3, he would have a putative offense level of 34. ECF No. 111 ¶ 165. Under the hypothetical with an offense level of 34 and criminal history category III, the guideline range is 188 to 235 months, far in excess of the statutory maximum for Count 2 of 10 years. The Government also highlights that the assault on J.E.G. demonstrates a pattern of assaulting victims in their sleep. Indeed, the record reflects that McKay assaulted his girlfriend in 2009 in her sleep, he assaulted Charles with the curl bar in his sleep, and the sexual assault occurred while J.E.G. was sleeping. These attacks show McKay's propensity to assault victims in their most vulnerable state, when they are unable to defend themselves. In light of these considerations, an upward departure of **8 levels** under § 5K2.21 is warranted.

## V.    U.S.S.G. § 4A1.3 Departure

Next, the Government seeks an upward departure under U.S.S.G. § 4A1.3 where "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." ECF No. 106, at 4. The Ninth Circuit has established that an upward departure is permissible upon a finding that "*either* the seriousness of the defendant's past conduct *or* the likelihood of recidivism was underrepresented" in the criminal history calculation.

Memorandum Opinion Re: Sentencing ~ 11

*United States v. Bad Marriage*, 392 F.3d 1103, 1108 (9th Cir. 2004) (emphasis in original).

The Government argues that Category III does not adequately represent McKay's criminal history and McKay should be in Category VI. ECF No. 106, at 6. In response, McKay argues that a § 4A1.3 departure is impermissible under the holding in *Bad Marriage*, 392 F.3d at 1111.

In *Bad Marriage*, the district court departed upwards from Category III to IV when the defendant had 35 or more separate adult convictions—one of which was unlawful use of a weapon, and two were for domestic or partner assault. *Id.* at 1107. The district court also noted the defendant's approximately 60 tribal convictions when imposing his sentence but later specified that the tribal convictions were not considered in departing upwards. *Id.*

*Bad Marriage* grappled with whether the past convictions in support of a § 4A1.3 departure must be "serious" or "large scale" in nature for the district court to make the departure. *Id.* at 1109–10. The Court held that although the prior conviction need not be serious to be considered for purposes of departing under § 4A1.3, "seriousness of past convictions is an important factor to be considered." *Id.* at 1110. And the importance of considering seriousness of past crimes is underscored by the principle that courts look to the quality of the defendant's criminal history rather than quantity of such offenses. *Id.* "An upward departure under § 4A1.3 may not be based on mechanical calculations. It must be justified,

Memorandum Opinion Re: Sentencing ~ 12

rather, by a qualitative difference between the defendant's overall record and that of other defendants in the same criminal history category." *Id.* (quoting *United States v. Carrillo-Alvarez*, 3 F.3d 316, 322 (9th Cir. 1993)).

Importantly, *Bad Marriage* highlights that prior convictions that have already been assigned points cannot be used to support a departure under § 4A1.3. *Id.* at 1111. There, the district court departed upward based on 35 prior convictions, many of which had already been counted in accordance with § 4A1.1(c). *Id.* The Ninth Circuit concluded that the district court's analysis double-counted these minor convictions which frustrated the Guidelines' "evident intention to limit the number of minor past convictions bearing on a sentencing determination." *Id.*

This Court finds that 3 points for McKay's two violent offenses resulting in 185 months in prison drastically understates the severity of his conduct. Similarly, a 2-point increase by the state charges understates the seriousness of the conduct. As noted above, a total of 5 criminal history points for McKay's conviction for second degree murder and 2009 assault severely understate McKay's criminal history score. Unfortunately, this Court is not able to depart upward based on these crimes that have already been accounted for in under § 4A1.1.

## VI.   Offender Characteristics

### A. Family Characteristics

McKay rarely saw his father growing up because he was in-and-out of jail. ECF No. 111 ¶ 110. McKay stated his parents were alcoholics and had a lot of domestic violence issues. Before the instant offense, McKay resided with his mother, age 69, in Nespelem, Washington. McKay has seven siblings with whom he has no contact. *Id.* ¶ 113. McKay has seven children with different women. *Id.* ¶ 116. McKay is a member of the Colville Confederated Tribe. *Id.* ¶ 114.

### B. Mental and Emotional Health

McKay advises he suffers from anxiety and depression and he takes medication for these issues. *Id.* ¶ 122. During two periods of his pretrial incarceration (July 16 to July 19, 2020, and August 12 to September 15, 2020), McKay refused his medications. *Id.* ¶ 123. As noted in McKay's Objection 2 to the PSR, *infra* at 15, McKay asserted that he refused medication because corrections officers attempted to force him to take extended release medications in crushed form. ECF No. 107, at 2–3.

### C. Physical Health

McKay suffered a car accident in 2015 that resulted in debilitating injury. ECF No. 111 ¶ 118. He had to relearn to walk and has rods and screws in his back. *Id.* The back problems continue to cause pain and are a hinderance to obtaining employment. *Id.* ¶ 120.

Memorandum Opinion Re: Sentencing ~ 14

### D. Substance Abuse

McKay first consumed alcohol and marijuana around age 11 and would use them regularly. ECF No. 111 ¶ 129. According to McKay, in 2019 he discontinued heavy use of alcohol and if he drank, it was not to intoxication. He also occasionally used marijuana. *Id.* After release from prison in 2014, McKay used methamphetamine and heroin for a couple of months, but he reported he stopped because he needed to care for his mother. *Id.* ¶ 131.

### E. Education/Job Skills

McKay earned his GED in 2001 while in the custody of BOP. Prior to his current arrest, he was in the process of applying for disability benefits. *Id.* ¶ 140.

### VII. Defendant's Objections to PSR (ECF No. 107)

**Objection No. 1: *Education***

The objection that McKay has "No HS Diploma or GED" has been remedied by U.S. Probation to show that McKay earned his GED. ECF No. 111, at 2.

**Objection 2: *Physical Condition***

McKay's asserted reason for refusing medication has been added to the PSR. McKay explained he refused medications because he was experiencing adverse effects caused by corrections staff forcing him to take extended release pills in crushed form. ECF No. 111 ¶ 121.

///

///

Memorandum Opinion Re: Sentencing ~ 15

**Objection 3:** *Dangerous Weapon*

McKay objects to the 4-level increase for the use of a dangerous weapon. Defendant contends that he punched his brother rather than hitting him with the curl bar. The record supports the finding that the curl bar was used when McKay struck the victim. Both McKay and Charles acknowledged that the curl bar was used. ECF No. 110-4, at 3–4. When contacted by tribal police, Charles stated that he had been hit by McKay with a large pipe. *Id.* at 3. McKay stated to police, "I'm not going to lie to you, I hit him with a pipe." *Id.* at 4. McKay confirmed that the curl bar law enforcement found behind the door was the one used to hit his brother. *Id.* In addition, one of the reddish-brown stains on the curl bar matched Charles's DNA, indicating that the bar was used to strike him. ECF No. 106-4, at 2.

**Objection 4:** *Ongoing vision impairment*

McKay claims that the record does not support that the victim's ongoing vision issues are related to the offense. ECF No. 107, at 4. McKay argues that the Government has not produced expert testimony or evidence which demonstrates that Charles's vision was acceptable prior to the attack. *Id.* U.S. Probation removed the information that the victim continues to have vision issues, but the 5-level increase remains because of the severity of the injuries to Charles's face. ECF No. 112, at 3.

///

///

Memorandum Opinion Re: Sentencing ~ 16

**Objection 5:** *Bench warrant information*

McKay contends that the reference to his bench warrant in the PSR for his pending second-degree rape charge is unfairly prejudicial because that charge is the one resolved in the plea agreement, and because McKay was in custody for the present charges during his February 2020 failure to appear. ECF No. 107, at 5. The Court agrees with U.S Probation that the inclusion of this pending state charge in the PSR is proper. The Court understands that McKay was in custody for the present charges causing his failure to appear. The fact that McKay may still face state charges for the alleged sexual abuse in Spokane County Jail has not negatively prejudiced McKay in the present sentencing.

**Objection 6:** *Upward Variance*

McKay objects to ¶ 169, Part F, of the PSR which states that an upward variance may be appropriate in considering the 18 U.S.C. § 3553(a) factors. U.S. Probation has updated the PSR. ECF No. 112, at 4. Paragraph 169 identifies the Section 3553(a) factors and states that the serious nature of McKay's present offense and the sentencing factors may warrant an upward variance. ECF No. 111 ¶ 169. The paragraph also reiterates McKay's physical and mental health, his alcohol and substance abuse, his financial situation, and the dynamics in his family and home life. *Id.* The paragraph is appropriate.

As discussed above, McKay's objections have either been addressed by the probation officer or are otherwise overruled.

Memorandum Opinion Re: Sentencing ~ 17

## VIII.  Imposing Sentence

As stated above, the Court finds that the conduct from dismissed Count 3 warrants an 8-level upward departure resulting in an offense level of 28. With a criminal history category of III, this yields a Guideline range of 97 to 121 months (when accounting for the statutory maximum). The Court has considered the 18 U.S.C. § 3553(a) factors and has determined that a sentence of **120 months** is sufficient but not greater than necessary to achieve the goals of sentencing. McKay is also ordered **3 years of supervised release**.

Although the Court finds that the § 5K2.21 is applicable, an upward variance is also warranted because of the significant danger McKay poses to the community. McKay has repeatedly attacked others in their sleep over the course of his lifetime. The Court is also cognizant that lengthy periods of incarceration have failed to deter this abhorrent behavior.

## IX.  Appellate Rights

After the close of the sentencing hearing, the Court called the parties back to announce that it was rejecting the waiver of appeal rights contained in the plea agreement as to this Court's sentence. McKay had already been removed from the courtroom and had departed the building. The Court noted that appellate waivers are many times coerced because criminal defendants have such little leverage in the federal judicial system. Accordingly, this Court rejects the appellate waiver contained in the plea agreement. At the Court's request, McKay filed an election to

waive his right to be present for the Court's announcement that it rejects the appellate waiver. ECF No. 122. McKay acknowledged that his defense counsel has informed him of his appellate rights, and he stated an intent to appeal this judgment and sentence. ECF No. 122.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and forward copies to counsel.

**DATED** this 16th day of November 2020.

*/s/ Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge